IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CU CAPITAL MARKET SOLUTIONS,
LLC and LEWIS N. LESTER, SR.,

    Plaintiffs,

v.

OLDEN LANE SECURITIES, LLC, et al.,

    Defendants.

Case No. 18-2597-DDC-KGG

## MEMORANDUM AND ORDER

This matter comes before the court on plaintiffs CU Capital Market Solutions, LLC ("CU Capital") and Lewis N. Lester's Motion to Amend Complaint (Doc. 40). Defendants Olden Lane Securities, LLC; Olden Lane Advisors, LLC; Olden Lane, LLC; and Jeremy Christopher Colvin have filed a Response (Doc. 41). And, plaintiffs have filed a Reply (Doc. 42). For the reasons explained below, the court denies plaintiffs' motion. But, if plaintiffs choose to proceed in this case, the court provides the parties additional time to address plaintiffs' argument—first made in their Reply—that the court properly may exercise diversity jurisdiction if the court drops plaintiff CU Capital and the Olden Lane defendants under Federal Rule of Civil Procedure 21.

**I.    Facts**

CU Capital is a limited liability company providing consulting services to federally insured state credit unions and federally chartered credit unions. Olden Lane Securities, LLC, is an SEC-registered investment advisor. CU Capital offers securities through Olden Lane Securities, LLC, to secure secondary capital for its client credit unions. As part of their business relationship with one another, CU Capital and Olden Lane Securities, LLC, have entered into

several agreements, including a Mutual Non-Disclosure and Confidentiality Letter Agreement; an Office of Supervisory Jurisdiction ("OSJ") Branch Office Agreement; and an Agreement of Portfolio Consultancy and Sub-Supervision Services. Docs. 14-1, 14-2, 14-4. CU Capital contends that it has shared confidential and proprietary information with Olden Lane Securities, LLC, and the agreements govern that information. And, at something of a high level, CU Capital contends that Olden Lane Securities, LLC, has breached these agreements and misused CU Capital's confidential and propriety information to form a competing venture.

On November 6, 2018, CU Capital filed its original Complaint (Doc. 1) against Olden Lane Securities, LLC; Olden Lane Advisors, LLC; and Olden Lane, LLC (collectively, the "Olden Lane defendants"). Olden Lane, LLC, is the sole owner of both Olden Lane Securities, LLC, and Olden Lane Advisors, LLC. CU Capital's original Complaint asserted eight state law causes of action against defendants, including breach of contract; tortious interference; misappropriation of trade secrets under the Kansas Uniform Trade Secret Act ("KUTSA"), Kan. Stat. Ann. §§ 60-3320–3330; unjust enrichment; and conversion. *Id.* (Compl. ¶¶ 119–86). Also, CU Capital sought temporary and permanent injunctive relief. *Id.* (Compl. ¶¶ 187–202).

On December 5, 2018, CU Capital filed an Amended Complaint (Doc. 14). The Amended Complaint added Lewis N. Lester, Sr.—CU Capital's CEO—as a plaintiff. *Id.* (Am. Compl. ¶ 2). And, it added Jeremy Christopher Colvin—the managing director at the OSJ branch office—as a defendant. *Id.* (Am. Compl. ¶ 7). The Amended Complaint asserted a new state law breach of contract claim against Mr. Colvin and a second state law tortious interference claim against the Olden Lane defendants. *Id.* (Am. Compl. ¶¶ 150–54).

On March 7, 2019, plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction. Doc. 22. Before the court proceeded on plaintiffs' motion, it issued an

Order to Show Cause because plaintiffs had not pleaded facts sufficient to support diversity jurisdiction. Doc. 27. Plaintiffs' Amended Complaint named four LLCs as parties. And, a limited liability company "takes the citizenship of all its members." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015). The governing standard requires complete diversity of citizenship—*i.e.*, plaintiffs must allege that no LLC member on plaintiffs' side of the case caption is a citizen of the same state as any individual or entity named on the defendants' side of the caption. *See Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014). But, plaintiffs' Amended Complaint contained no information about the membership of any LLC.

Plaintiffs' Response to Order to Show Cause (Doc. 30) represented that CU Capital was a citizen of Kansas and Georgia. Doc. 30 at 2. Specifically, plaintiffs asserted that three members comprised CU Capital with the following domiciles: Robert Colvin (Kansas); Lewis N. Lester (Georgia); and William T. Mullally (Georgia). On the other side of the caption, plaintiffs' Response alleged that the three limited liability companies—Olden Lane Securities, LLC; Olden Lane Advisors, LLC; and Olden Lane, LLC—were citizens of Delaware and New Jersey. Plaintiffs also alleged that Mr. Colvin—the individual defendant—was domiciled in New Jersey.

Defendants then filed a Response (Doc. 31). They attached affidavits and exhibits purporting to show a lack of diversity between the parties. That is, defendants asserted that plaintiffs had failed to disclose two more CU Capital members: Jefferson Financial Federal Credit Union ("Jefferson Credit Union") and SunState Federal Credit Union ("SunState Credit Union"). *Id.* at 2–3; Doc. 31-1. And, defendants asserted, Olden Lane, LLC's membership included citizens domiciled in Florida.

3

On March 20, 2019, the court conducted a hearing trying to determine whether the court had subject matter jurisdiction over the case. During this hearing, plaintiffs contended that the two credit unions were "lower-tier" members of CU Capital. In later briefing, plaintiffs asserted that characterization misstated the credit unions' position in the company; instead, plaintiffs later characterized the credit unions as "unitholders" in CU Capital. Doc. 38 at 2 n.1. Defendants disputed plaintiffs' recharacterization and argued that the federally chartered corporations' membership in CU Capital precluded diversity of citizenship. Also, defendants argued, if the court applied the localization exception—*i.e.*, a doctrine where a federally chartered entity takes the domicile of the state where its activities are localized—the parties still would not be completely diverse. Specifically, defendants asserted that SunState Credit Union is a Florida citizen under the localization exception. And, Olden Lane, LLC's general counsel testified that Olden Lane, LLC, partially is owned by two limited partnerships: Niagara Credit Income Fund AI, LP, and Niagara Credit Income Fund QP, LP ("Niagara Funds"). According to the general counsel, the two Niagara Funds, in turn, include limited partners domiciled in Florida. And so, even if the localization exception applied to SunState Credit Union, the court still would lack diversity jurisdiction.

After the hearing, the parties filed another round of briefing on subject matter jurisdiction. Docs. 38, 39. Then, on April 4, 2019, plaintiffs filed a Motion to Amend Complaint. Doc. 40. Plaintiffs' motion sought to file a Second Amended Complaint, which would include two previously unasserted federal claims under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1831–39, and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. Defendants filed a Response, arguing that the court could not grant plaintiffs' motion because, in effect, it would confer subject matter jurisdiction on the court retroactively. Doc. 41.

Plaintiffs' Reply contended that amendment was proper, and, for the first time, also argued that the court could drop both plaintiff CU Capital and the Olden Lane defendants to save diversity jurisdiction between Mr. Lester and Mr. Colvin. Doc. 42 at 3–4.

## II.     Legal Standard

Plaintiffs have invoked the court's subject matter jurisdiction under the federal diversity statute, 28 U.S.C. § 1332. Under that statute, federal jurisdiction is proper where "the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1). For diversity jurisdiction purposes, a limited liability company "takes the citizenship of all its members." *Siloam Springs Hotel, L.L.C.*, 781 F.3d at 1234. In contrast, a corporation is "domiciled where it is incorporated and where it has its 'principal place of business[.]'" *Newsome v. Gallacher*, 722 F.3d 1257, 1267 (10th Cir. 2013) (quoting 28 U.S.C. § 1332(c)(1)). For individuals, "a person is a citizen of a state if the person is domiciled in that state." *Middleton*, 749 F.3d at 1200 (citation omitted). "And a person acquires domicile in a state when the person resides there and intends to remain there indefinitely." *Id.* (citations omitted).

The court maintains "'an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1013 (10th Cir. 2018) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). Plaintiffs bear the burden of establishing that federal jurisdiction exists. *Kinney v. Blue Dot Servs. of Kan.*, 505 F. App'x 812, 814 (10th Cir. 2012).

Federal of Civil Procedure 12(b)(1) "allows a court to dismiss a complaint for lack of subject matter jurisdiction." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir.

5

2015) (citing *Becker v. Ute Indian Tribe*, 770 F.3d 944, 946 (10th Cir. 2014)). Rule 12(b)(1) motions constitute either "(1) a facial attack on the sufficiency of the complaint's allegations [of] subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

When a defendant makes a facial attack to subject matter jurisdiction, the court considers the complaint's pleaded facts as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citation omitted). But, when the defendant presents a factual attack, the court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. Instead, the court has "wide discretion to allow affidavits, other documents, and [conduct] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* And, when analyzing a factual attack, the court's "reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion." *Id.*

In this case, the question raised by the court's Show Cause Order amounted, in effect, to a facial attack on the Amended Complaint—*i.e.*, the court questioned the sufficiency of the Amended Complaint's jurisdictional allegations because it failed to identify the members of each limited liability company and the domiciles of the individual parties. In response to the Show Cause Order, defendants then mounted a factual attack, challenging the factual underpinnings of diversity jurisdiction—*i.e.*, defendants asserted, as a matter of fact, that the parties were not completely diverse. This persuaded the court to conduct an evidentiary hearing with the parties on March 20, 2019. Consistent with Circuit precedent, the court considers the affidavits and exhibits provided by the parties without converting to summary judgment analysis.

### III. Discussion

The court addresses four questions in this Order. First, the court evaluates whether Jefferson Credit Union and SunState Credit Union are members of the LLC that is CU Capital. Second, concluding that the credit unions are members, the court then considers the effect of their membership on the subject matter jurisdiction analysis. Third, the court assesses whether it can grant plaintiffs' Motion for Leave to Amend to assert a Second Amended Complaint. Fourth, the court considers whether to address plaintiffs' arguments under Fed. R. Civ. P. 21, presented in their Reply for the first time.

#### A. Are Jefferson Credit Union and SunState Credit Union "members" of CU Capital?

It is well-established that unincorporated organizations take the citizenship of each of their members. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 192 (1990). But, "[*Carden*] did not specify what a 'member' is." Charles Alan Wright et al., 13F Federal Practice and Procedure Jurisdiction § 3630.1 (3d ed. 2019). Courts addressing this issue have concluded that "[t]he question of whose citizenship constitutes part of [an] LLC's citizenship is ultimately governed by the law of the state of incorporation." *Celtig, LLC v. Patey*, 326 F. Supp. 3d 1299, 1304 (D. Utah 2018) (quoting *Dumann Realty, LLC v. Faust*, No. 09 Civ. 7651(JPO), 2013 WL 30672, at *2 (S.D.N.Y. Jan. 3, 2013)); *CR Holding Co., LLP v. Campbell*, No. 11-2051-JWL, 2011 WL 2357649, at *3 (D. Kan. June 9, 2011). Here, CU Capital is a Georgia LLC, so the court applies Georgia law.

Under Georgia law, the term "member"—as applied to a Georgia LLC—"means a person who has been admitted to a limited liability company as a member as provided in Code Section 14-11-505 and who has not ceased to be a member as provided in Code Section 14-11-601 or 14-11-601.1." Ga. Code Ann. § 14-11-101(16). A "person" can be "an individual, business entity,

business trust, estate, trust, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity." Ga. Code Ann. § 140-11-101(19). Section 14-11-505 provides:

> (a) In connection with the formation of a limited liability company, a person is admitted as a member of the limited liability company upon the later to occur of:
>
> (1) The formation of the limited liability company; or
>
> (2) The time provided in and upon compliance with the articles of organization or a written operating agreement or, if the articles of organization and any written operating agreement do not so provide, when the person's admission is reflected in the records of the limited liability company.

Ga. Code Ann. § 14-11-505(a)(1)–(2). Hoping to persuade the court that subject matter jurisdiction exists, plaintiffs provide Robert Colvin's affidavit. Robert Colvin is the president of CU Capital. Doc. 14 at 4 (Am. Compl. ¶ 20). His affidavit contends that Jefferson Credit Union and SunState Credit Union are not members of CU Capital and only Mr. Colvin, Mr. Lester, and Mr. Mullaly hold membership interests in CU Capital. Doc. 38-1. In contrast, plaintiffs represent that the two credit unions are "unitholders" but not members.

The problem with Mr. Colvin's affidavit is that CU Capital's corporate records say just the opposite. Plaintiffs have attached CU Capital's Operating Agreement ("OA") to their filing. Doc. 38-2. The OA identifies Jefferson Credit Union and SunState Credit Union as Class CU Members. And, the OA's effective date is May 9, 2016. CU Capital subdivides its ownership structure into three classes of units: Class A Units; Class B Units; and Class CU Units. Doc. 38-2 at 8. The OA explains that "Unitholders may or may not be Members." *Id.* But, the OA doesn't end there. It also provides:

8

> The name, present mailing address, and Units of each Member on the Effective Date are set forth on Attachment A. **There are no Unitholders who are not Members on the Effective Date.**

*Id.* (emphasis added). Likewise, the OA defines the term "member"—as used in that agreement—to include "each person listed in Attachment A as a Member and each other person who is admitted as a Member pursuant to the terms and conditions of this Agreement. All Members are Unitholders." Doc. 38-2 at 49. Plaintiffs have included Attachment A, which is titled "List of Members and Units." Doc. 38-2 at 55. The "List of Members and Units" is subdivided into Class A, Class B, and Class CU Unit Holders. *Id.* at 55–56. And, under the list of the third class of unitholders—Class CU Unit Holders—Attachment A lists Jefferson Credit Union and SunState Credit Union. *Id.* at 56. Also, the OA explicitly contemplates Class CU Unit Holders as Members—*i.e.*, "'CU-Members' are holders of Class CU Units who have been admitted as Members." Doc. 38-2 at 9. From this evidence, the court thus finds that on the Effective Date—May 9, 2016—CU Capital's OA recognized the two credit unions as members of the LLC.[1]

Plaintiffs contend that "[i]ndirect ownership of an LLC or LP, without control of the business entity, would be inconsistent with the underlying rationale for inclusion of a person or entity [in the diversity analysis]." Doc. 38 at 8. Instead, plaintiffs assert, the court should look to the degree of control that Jefferson Credit Union and SunState Credit Union may exercise over CU Capital's management. But, the Supreme Court's decision in *Carden* has foreclosed plaintiffs' argument.

---

[1] Defendants also have attached a CU Capital balance sheet as of August 31, 2018. Daniel Prezioso—general counsel for Olden Lane Securities, LLC—has testified the balance sheet is a true and accurate copy. Doc. 31-1 at 1–2 (Prezioso Aff. ¶ 4). Under the "Equity" heading, the balance sheet lists the following to have "Member Capital Shares": Lewis Lester, Robert Colvin, William Mullally, Jefferson Financial CU, and Sunstate Federal CU. *Id.* at 6.

In *Carden*, the Court considered whether—for diversity purposes—the citizenship of a limited partnership should be decided based solely on the citizenship of the general partners. 494 U.S. at 192. The respondent there argued that general partners exercised far more control than limited partners. *See id.* (contending that general partners "manage the assets, control the litigation, and bear the risk of liability for the limited partnership's debt," and exercise "exclusive and complete management and control of the operations of the partnership."). But, the Court rejected this approach:

> We have never held that an artificial entity, suing or being sued in its own name, can invoke the diversity jurisdiction of the federal courts based on the citizenship of some but not all of its members. No doubt some members of the joint stock company in *Chapman*, the labor union in *Bouligny*, and the limited partnership association in *Great Southern* exercised greater control over their respective entities than other members. But such considerations have played no part in our decisions.

*Id.*; *see also Siloam Springs Hotel, L.L.C.*, 781 F.3d at 1238. This reasoning persuades the court that plaintiffs' argument misapprehends the governing law. The court thus concludes that Jefferson Credit Union and SunState Credit Union are members of CU Capital, and so the court must consider the effect of their membership on subject matter jurisdiction.

### B. Does Jefferson Credit Union and SunState Credit Union's membership status preclude complete diversity?

Both Jefferson Credit Union and SunState Credit Union are federally chartered credit unions. Doc. 38-1 at 4 (Colvin Aff. ¶ 17). And, traditionally, federally chartered corporations are not citizens of any state, and they thus operate as diversity-destroying entities. *Bankers' Tr. Co. v. Texas & Pac. Ry. Co.*, 241 U.S. 295, 309–10 (1916) (holding that railroad corporation incorporated by act of Congress, not state law, is not a citizen of any state); *World Fuel Servs.*,

*Inc. v. Nambe Pueblo Dev. Corp.*, 362 F. Supp. 3d 1021, 1085 (D.N.M. 2019) (citing *Bankers' Tr. Co.*, 241 U.S. at 309–10).

This general rule has two exceptions. First, *Bankers' Trust Company* recognized that Congress may confer state citizenship on federally incorporated entities for jurisdictional purposes. *Bankers' Tr. Co.*, 241 U.S. at 310. For example, Congress amended the Home Owners' Loan Act, 12 U.S.C. §§ 1461–70, making a federal savings association a citizen of the state where the association has its home office. 12 U.S.C. § 1464(x); *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 427–29 (7th Cir. 2009) (tracing history of diversity jurisdiction for federally chartered savings associations). But, the first exception does not apply here. The Federal Credit Union Act, §§ 12 U.S.C. §§ 1751–1795, governs the creation and oversight of federally incorporated credit unions. And, "the Federal Credit Union Act itself says nothing about the citizenship of corporations created under it." *Feuchtwanger Corp. v. Lake Hiawatha Fed. Credit Union*, 272 F.2d 453, 455 (3d Cir. 1959).

Under the second exception—*i.e.*, the localization exception—"a federally chartered corporation may be eligible for diversity jurisdiction where its activities are sufficiently localized so that it may be deemed a citizen of a single state." *Lehman Bros. Bank, FSB v. Frank T. Yoder Mortg.*, 415 F. Supp. 2d 636, 640 (E.D. Va. 2006). The localization exception recognizes that "notwithstanding their federal charter, certain federal corporations have only a limited geographical presence, and therefore should be afforded the same opportunity to invoke diversity jurisdiction as entities incorporated under state law." *Id.* (citing *Feuchtwanger Corp.*, 272 F.2d at 453); *see also Loyola Fed. Sav. Bank v. Fickling*, 58 F.3d 603, 606 (11th Cir. 1995); *World Fuel Servs., Inc.*, 362 F. Supp. 3d at 1085 n.22. When assessing the localization exception, courts have considered the following factors: "(i) the corporation's principal place of business;

(ii) the location of the branch offices; (iii) the volume of business transacted in different states; and (iv) 'any other evidence that tends to show the local or national nature of the corporation's plans and operations.'" *Lehman Bros. Bank, FSB*, 415 F. Supp. 2d at 640 (citing *Auriemma Consulting Grp., Inc. v. Universal Sav. Bank*, 367 F. Supp. 2d 311, 313 (E.D.N.Y. 2005); *Iceland Seafood Corp. v. Nat'l Consumer Coop. Bank*, 285 F. Supp. 2d 719, 724 (E.D. Va. 2003); *Loyola Fed. Sav. Bank*, 58 F.3d at 606)).

But, the court need not predict whether the Tenth Circuit would apply the localization exception in this case. Even if the Circuit would adopt the localization exception and the localization exception applied to both Jefferson Credit Union and SunState Credit Union, complete diversity would not exist because it would mean that both sides of the caption include citizens domiciled in Florida. This analysis focuses on SunState and assumes that the localization exception applies—*i.e.*, SunState is a Florida citizen.

Although it was not their burden to disprove diversity, defendants have adduced material evidence about the jurisdictional dispute. Because diversity jurisdiction depends on the citizenship of "all of the members" of an unincorporated organization, *see Carden*, 494 U.S. at 195–96, where an "LLC has, as one of its members another LLC, 'the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be' to determine the citizenship of the LLC." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) (quoting *Hart v. Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003)). Defendants' evidence shows that two members of Olden Lane, LLC—the Niagara Funds—in turn have limited partners who are domiciled in Florida.

At the evidentiary hearing, Daniel Prezioso—Olden Lane, LLC's general counsel— testified to its membership structure. Specifically, Mr. Prezioso testified that the Niagara Funds

12

were members of Olden Lane, LLC.  In their briefing, defendants also attached the affidavit of Richard De Silva.  Mr. De Silva is the Managing Partner of Lateral Investment Management, LLC, and he is the investment manager for the Niagara Funds.  Doc. 39-2 at 1.  Mr. De Silva's affidavit represents that both funds "have been members of Olden Lane LLC continuously from before November 6, 2018, until present day." *Id.*  Defendants also submitted the affidavit of Elizabeth Mueller, who serves as the Managing Member and COO of Socium, LLC.  Socium is the administrator and transfer agent for the Niagara funds.  Ms. Mueller's affidavit asserts that each fund has at least one limited partner domiciled in Florida.  Doc. 39-3 at 1.  Ms. Mueller has attached a copy of a register of each of the funds' limited partners as of November 6, 2018.  These registers include the fund name, investor ID, city, state, and zip code for limited partners.  This evidence supports a finding that Olden Lane, LLC, by virtue of the Niagara funds, is a Florida citizen.  So, even under the localization exception, the parties are not diverse because a Florida citizen resides on both sides of the caption.

### C. Can the court grant plaintiffs' Motion for Leave to Amend when diversity has not been established?

Plaintiffs also have filed a Motion for Leave to Amend (Doc. 40).  Plaintiffs have attached their proposed Verified Second Amended Complaint to the motion.  The Second Amended Complaint would assert two new federal claims:  (1) a claim under the DTSA and (2) a claim under the CFAA.  Then, plaintiffs assert, the court could assume federal question jurisdiction over the DTSA and CFAA claims under 28 U.S.C. § 1331 and supplemental jurisdiction of the state law claims under 28 U.S.C. § 1367.

Defendants have filed a Response.  Doc. 41.  Because the court has found the parties are not diverse, defendants argue that the court is without subject matter jurisdiction to rule on plaintiffs' motion.  Specifically, defendants contend that plaintiffs may not add new federal

13

causes of action to create jurisdiction that did not exist when plaintiffs filed their First Amended Complaint.

Under 28 U.S.C. § 1653, "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." The court thus may "permit amendment of 'incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves.'" *Daneshvar v. Graphic Tech., Inc.*, 237 F. App'x 309, 314 (10th Cir. 2007) (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989)). Section 1653 seeks "to avoid dismissals on technical grounds." *Daneshvar*, 237 F. App'x at 315 (quoting *Brennan v. Univ. of Kan.*, 451 F.2d 1287, 1289 (10th Cir. 1971)). But, "even liberally construed," Section 1653 "does not allow a plaintiff to amend its complaint to substitute a new cause of action over which there is subject-matter jurisdiction for one in which there is not." *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 161 (2d Cir. 1998); *see also Brennan*, 451 F.2d at 1289 ("The power of the . . . court to correct defective jurisdictional allegations concerns defects of form, not substance."); *Geismann v. Aestheticare, LLC*, 622 F. Supp. 2d 1091, 1095 (D. Kan. 2008) ("Section 1653 does not allow the Court to amend a pleading so as to produce jurisdiction where none actually existed before."). In short, "[t]he danger against which a court must guard is that a party will attempt to use [Section] 1653 to retroactively create subject matter jurisdiction." *Whitmire v. Victus Ltd.*, 212 F.3d 885, 888 (5th Cir. 2000).

Plaintiffs' proposed amendment would add two new federal causes of action—under the DTSA and CFAA—which, in turn, would confer federal question jurisdiction for the first time.[2]

---

[2] Plaintiffs also invoke Fed. R. Civ. P. 15(a)(2). The court proceeds first with its analysis under § 1653 because it operates as a specific application of the more general Rule 15(a) when jurisdiction has been challenged:

14

In short, plaintiffs' amendment does not aspire to cure a "technical defect." Instead, it asks to create subject matter jurisdiction retroactively by inserting new federal causes of action into the complaint. *See, e.g.*, *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 512 (5th Cir. 1985) (denying leave to amend when plaintiffs sought to add previously abandoned federal causes of action or replead the elements of their remaining claim under the Magnuson-Moss Warranty Act); *Broad v. DKP Corp.*, No. 97 CIV. 2029 (LAP), 1998 WL 516113, at *2 (S.D.N.Y. Aug. 19, 1998), *aff'd*, 182 F.3d 898 (2d Cir. 1999) (seeking to amend complaint to assert RICO claim under 28 U.S.C. § 1331 where no diversity was present would amount to a "'legal do-over' in light of grave questions concerning the existence of diversity jurisdiction in the first place, [which] thwarts the statutory requirements governing subject matter jurisdiction"); *Advani Enters., Inc.*, 140 F.3d at 161; *cf. Whitmire v. Victus Ltd.*, 212 F.3d 885, 890 (5th Cir. 2000) ("[R]equested amendments, which add neither new causes of action, new parties, nor new substantive facts to the case, but merely state and support an alternative pre-existing jurisdictional base, fall within the ambit of § 1653.").

Plaintiffs contend that adding the DTSA and CFAA claim would not constitute a substantive change, nor would it add any new factual allegations. As an initial matter, the Second Amended Complaint includes factual allegations not present in the First Amended Complaint. *See, e.g.*, Doc. 40-1 at 31 (Second Am. Compl. ¶ 149), 37 (¶¶ 186–88). But, beyond

---

> The language of Section 1653 is "[i]n some respects . . . at variance with the text of Rule 15 and arguably supersedes it. However, the cases do not reveal any conflict between the two." 6 Charles Alan Wright et al., Federal Practice and Procedure § 1474 (2d ed. 1990). Indeed, case law indicates that Section 1653 serves essentially as a specific application of Rule 15 that "expressly permits amendments to cure inadequate jurisdiction." James Wm. Moore et al., Moore's Federal Practice § 15.14[3] (3d ed. 1997)

*See Asset Value Fund Ltd. P'ship v. The Care Grp., Inc.*, 179 F.R.D. 117, 119 (S.D.N.Y. 1998).

that, plaintiffs' position mirrors an argument recently rejected in *Multicultural Radio Broadcasting, Inc. v. Korean Radio Broadcasting, Inc.*, No. CV 15-1961 (SRC), 2017 WL 436250 (D.N.J. Jan. 31, 2017).

There, plaintiff had sued defendants in diversity for breach of contract, unjust enrichment, and trade libel after the defendants—producers of radio programming—allegedly violated a time brokerage agreement with plaintiff—a radio station operator. *Id.* at *1. Defendants then contended that the parties were not diverse because plaintiff and defendants both resided in New York. *Id.* Plaintiff then filed a motion for leave to amend its complaint. Plaintiff sought to add a Lanham Act claim and invoke federal question jurisdiction under 28 U.S.C. § 1331. *Id.* at *2. In response, defendants filed a motion to dismiss for lack of subject matter jurisdiction. Like the case at hand, the court concluded, first, that plaintiff had not established diversity jurisdiction. *Id.* at *4. Then, the court considered whether the plaintiff could amend its complaint—*i.e.*, whether plaintiff could add a Lanham Act claim and invoke federal question jurisdiction. *Id.* Specifically, plaintiff argued that § 1653 permitted amendment because it did not "add facts not alleged in the original complaint [to] establish jurisdiction [under] 28 U.S.C. § 1331." *Id.* at *5. The court rejected plaintiff's argument.

It reasoned that the well-pleaded complaint rule barred amendment. Plaintiff's original complaint, the court noted, sought no remedy under the Lanham Act; instead, it alleged three state law claims and referenced no federal laws the defendants allegedly had violated. So, the court declined to "engraft a federal cause of action onto Plaintiff's original complaint simply because Plaintiff's allegations could in theory support one." *Id.* ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced." (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Strudley v. Santa Cruz Cty. Bank*, No. 5:15-CV-05106-EJD,

2017 WL 4355129, at *2 (N.D. Cal. Sept. 29, 2017) (denying plaintiffs' motion to amend complaint with federal causes of action and rejecting argument that they were "implied" in the initial complaint because plaintiffs' "federal securities claims are distinct and independent from the state-law claims alleged in the original complaint, even if the underlying facts are the same"), *aff'd*, 747 F. App'x 617 (9th Cir. 2019); *GenoSource, LLC v. Inguran, LLC*, No. 18-CV-113-CJW-KEM, 2019 WL 2041661, at *3 (N.D. Iowa Apr. 11, 2019) ("To permit plaintiff to amend its complaint to assert federal question jurisdiction based on the two new federal claims would be to permit plaintiff to create a new basis for jurisdiction when the facts supporting the new basis for jurisdiction—the assertion of a federal claim—did not exist previously. The Court finds that the amendment plaintiff seeks here is the type of amendment prohibited by Section 1653.").

In similar fashion, plaintiffs here seek to add federal DTSA and CFAA claims and plead federal question jurisdiction under 28 U.S.C. § 1331. Plaintiffs' First Amended Complaint merely alleges state law causes of action. And, the First Amended Complaint references no federal laws that defendants allegedly violated. So, like the District of New Jersey, the court declines to "engraft" two federal causes of action onto the First Amended Complaint.[3]

### D. What effect does Federal Rule of Civil Procedure 21 have on this case?

Plaintiffs' final argument is that the court—if it finds it has no subject matter jurisdiction—can allow the case to proceed with a reduced roster of parties. Namely, plaintiffs contend, diversity jurisdiction would exist between plaintiff Mr. Lester and defendant Mr.

---

[3] Plaintiffs assert that defendants also believed diversity existed because, earlier in the case, defendants sought to transfer the case to the District of New Jersey. Perhaps defendants so believed, but that doesn't matter at all. "Subject matter jurisdiction cannot be conferred or waived by consent, estoppel, or failure to challenge jurisdiction early in the proceedings." *Mid-Century Ins. Co. v. Johnson*, No. 13-2191-RDR, 2013 WL 3013620, at *3 (D. Kan. June 14, 2013).

Colvin. Plaintiffs thus propose to drop plaintiff CU Capital Markets and the Olden Lane defendants from the lawsuit.

Plaintiffs do not cite Federal Rule of Civil Procedure 21, but it serves as the basis for this argument. *See* Doc. 42 at 3. Under Rule 21, "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."

"A district court can dismiss a dispensable nondiverse party pursuant to Fed. R. Civ. P. 21 to cure a jurisdictional defect at any point in the litigation, including after judgment has been entered." *Ravenswood Inv. Co., L.P. v. Avalon Corr. Servs.*, 651 F.3d 1219, 1223 (10th Cir. 2011) (citations omitted); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989); *Jett v. Phillips & Assocs.*, 439 F.2d 987, 989–90 (10th Cir. 1971) ("Parties of course may be dropped in order to achieve the requisite diversity of citizenship if their presence is not essential to a just and meaningful adjudication."). Whether a party is indispensable requires the court to assess the factors specified by Rule 19(b). These factors require the court to consider:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

*Lenon v. St. Paul Mercury Ins. Co.*, 136 F.3d 1365, 1372–73 (10th Cir. 1998); *see also U.S. for Use & Benefit of Gen. Rock & Sand Corp. v. Chuska Dev. Corp.*, 55 F.3d 1491, 1496 (10th Cir. 1995) (requiring showing that the parties are dispensable and that their dismissal would not prejudice any of the parties involved). "Whether a party is indispensable, considering the factors

18

required under Rule 19(b), is a matter left to the district court's discretion." *Lenon*, 136 F.3d at 1371.

Plaintiffs present this argument for the first time in their Reply brief. Doc. 42 at 3. And it is well-established that our court declines to address arguments raised in this fashion. *See, e.g.*, *Liebau v. Columbia Cas. Co.*, 176 F. Supp. 2d 1236, 1244 (D. Kan. 2001) ("Courts in this district generally refuse to consider issues raised for the first time in a reply brief."). The court declines to address plaintiffs' argument. *See Ravenswood Inv. Co., L.P.*, 651 F.3d at 1225 (explaining that, while not barred, it is "unusual" to dismiss a plaintiff to achieve complete diversity). Instead, if plaintiffs choose to proceed in this fashion, plaintiffs must file supplemental briefing on its Rule 21 argument within 14 days of this Order. If plaintiffs file a supplemental brief, defendants may file a response within 14 days of plaintiffs' filing. And, if plaintiffs choose not to proceed in this fashion—and, instead, file a new case—plaintiffs must notify the court by filing a notice within 14 days of this Order.

Having concluded that currently the parties are not completely diverse and that plaintiffs cannot amend their Amended Complaint to add new federal causes of action, the court also considers defendants' Motion to Transfer Case (Doc. 6). Defendants filed their motion several months before the court questioned its subject matter jurisdiction. And, defendants' arguments only focused on CU Capital and the Olden Lane defendants' participation in the suit—*i.e.*, the Complaint had not yet been amended to add Mr. Lester and Mr. Colvin as parties. Because plaintiffs' Amended Complaint either (1) will be dismissed without prejudice based on CU Capital and the Olden Lane defendants' participation or (2) will proceed without them, the court denies defendants' Motion to Transfer Case without prejudice.

## IV. Conclusion

For the reasons explained, the court denies plaintiffs' Motion for Leave to Amend (Doc. 40). If plaintiffs choose to proceed in this case, the court directs plaintiffs to file supplemental briefing on its Rule 21 argument within 14 days of this Order. If plaintiffs file a supplemental brief, defendants may file a response within 14 days of plaintiffs' filing. Alternatively, if plaintiffs choose not to proceed in the instant case—and, instead, file a new case—plaintiffs should notify the court within 14 days of this Order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' Motion for Leave to Amend (Doc. 40) is denied.

**IT IS FURTHER ORDERED THAT** plaintiffs are directed to file a supplemental briefing addressing the applicability of Federal Rule of Civil Procedure 21 within 14 days of this Order's entry. If plaintiffs file a supplemental brief, defendants may file a response within 14 days of plaintiffs' filing. Alternatively, if plaintiffs choose not to proceed in the instant case—and, instead, file a new case—plaintiffs should notify the court within 14 days of this Order.

**IT IS FURTHER ORDERED THAT** defendants' Motion to Transfer Case (Doc. 6) is denied without prejudice to refiling.

**IT IS SO ORDERED.**

**Dated this 26th day of June, 2019, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**
